[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO STRIKE (#105)
On March 16, 1998, the plaintiff, InteliSearch, Inc., filed an eight-count revised complaint against the defendants, J Raymond Milo (Milo) and Siger Associates, LLC (Siger). This action arises out of InteliSearch's employment of Milo and the defendants' subsequent allegedly unfair competition.
In the first count, the plaintiff alleges that by developing and using the plaintiffs clients and resources on behalf of Siger, Milo breached his duty of loyalty and fiduciary duty to CT Page 14597 the plaintiff. In the second count. the plaintiff alleges that it reasonably relied and acted upon Milo's fraudulent misrepresentations in deciding to hire Milo and in deciding to reinstate Milo. In count three, the plaintiff alleges that Milo breached his contractual obligations to the plaintiff by pursuing activities on Siger's behalf while employed by the plaintiff. In counts four and five, respectively, the plaintiff alleges that Milo and Siger's conduct constitutes unfair methods of competition and unfair or deceptive acts or practices in violation of the Connecticut Unfair Trade and Practices Act (CUTPA), General Statutes § 42-110b(a) In the sixth and seventh counts, respectively, the plaintiff alleges that Milo and Siger wrongfully obtained information belonging to the plaintiff and were thereby unjustly enriched.[1] In the eighth count, the plaintiff alleges that Siger tortiously interfered with Milo's contractual obligation to the plaintiff.
Milo and Siger (hereinafter, the defendants) filed a motion to strike all counts of the plaintiffs complaint, and in the alternative, filed a motion to strike counts four through eight, accompanied by a memorandum of law, on April 27, 1998 The plaintiff filed an objection to the motion to strike, accompanied by a memorandum of law, on May 13, 1998. The defendants filed a reply memorandum of law in support of their motion to strike the plaintiff's revised complaint on August 5, 1998.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaints . . . to state a claim upon which relief can be granted." Peter-Michael,Inc v. Sea Shell Associates, 244 Conn. 269, 270, 709 A.2d 558
(1998). In determining the sufficiency of a motion to strike, "the court is limited to the facts alleged in the complaint."Faulkner v. United Technologies Corp. , 240 Conn. 576, 580,693 A.2d 293 (1997). The facts alleged in the complaint must be construed in a light most favorable to the pleader. RK Constructors, Inc. v.Fusco Corp. , 231 Conn. 381, 384, 650 A.2d 153 (1994). "If facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Internal quotation marks omitted.) Faulkner v. United Technologies Corp. , supra, 580.
The defendants move to strike on the ground that all counts of the plaintiff's revised complaint should be stricken because the plaintiff is a foreign corporation transacting business in Connecticut without a certificate of authority, and thus lacks standing. The plaintiff argues that the appropriate vehicle to CT Page 14598 attack a corporation's standing to maintain a suit is a special defense, rather than a motion to strike.
General Statutes § 33-921(a) (formerly § 33-412(a)) provides that "[a] foreign corporation transacting business in this state without a certificate of authority may not maintain a proceeding in any court in this state until it obtains a certificate of authority." General Statutes § 33-921(a). The issue of a plaintiff's corporate capacity to maintain a suit "is but a voidable defect, waived if not raised by the defendant in a timely manner by way of special defense." (Internal quotation marks omitted.) Boxed Beef Distributors v. Rexton,7 Conn. App. 555, 558, 509 A.2d 1060 (1986), citingUnited States Trust Co. of New York v. DiGhello, 179 Conn. 246,249, 425 A.2d 1287 (1979). "Pursuant to Practice Book § 160 [now Practice Book (1998 Rev.) § 10-46], if a defendant intends to controvert the capacity of a corporate plaintiff to maintain a suit, the proper procedural vehicle to raise that issue is by way of a special defense in his answer." Coolidge-Fairfield Equities Ltd.Partnership v. Somma III, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 159269 (March 17, 1998,Hickey, J.) (21 CONN. L. RPTR. 416, 416). "Whether a foreign corporation is transacting business to a sufficient extent to require a certificate of authority is a question of fact which is resolved by examining the complete factual circumstances of each case . . . Motions to strike are not appropriate to resolve such questions of fact . . ." (Citation omitted.) Finsys Company v.Daum, Superior Court, judicial district of Danbury, Docket No. 302656 (October 22, 1991, Fuller, J.) (5 CONN. L. RPTR. 169, 170)
The issue of the plaintiff's corporate capacity to maintain a suit should be raised by a special defense. Accordingly, the court denies the defendants' motion to strike all counts of the revised complaint.
The defendants also move to strike counts four through eight on the ground that they fail to state claims upon which relief can be granted. With regard to count four, the defendants argue that the plaintiff's CUTPA claim is insufficient as a matter of law because "there are no facts suggesting that the alleged acts of either defendant were in the conduct of any trade or commerce." (Memorandum of Law in Support of Defendants' Motion to Strike, pp. 5-6). Moreover, Milo contends that the plaintiff's allegations arise solely out of alleged breaches of Milo's employment relationship, and therefore are not covered by CUTPA. CT Page 14599 In opposing the motion to strike count four, the plaintiff argues that rather than arising out of Milo's employment with the plaintiff, the CUTPA claim arises out of Milo's conduct "that is not only outside the confines of his employment with the plaintiff, but in direct competition with the plaintiff's business interests." (Memorandum of Law in Opposition to Defendants' Motion to Strike, p. 7).
General Statutes § 42-110b(a) provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." General Statutes § 42-110b(a); see Willow SpringsCondominium Assn., Inc. v. Seventh BRT Development Corp. ,245 Conn. 1, 42, ___ A.2d ___ (1998). "In order to allege a CUTPA violation properly, the plaintiff must allege, inter alia, that the acts complained of were performed in a trade or business." (Citation omitted; internal quotation marks omitted.) Permanentv. Green, 32 Conn. App. 644, 655, 630 A.2d 615, cert. denied,228 Conn. 903, 634 A.2d 296 (1993). "Trade or commerce, in turn, is broadly defined as the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state." (Citation omitted; internal quotation marks omitted.) Willow Springs Condominium Assn., Inc. v. Seventh BRTDevelopment Corp. , supra, 245 Conn. 42. CUTPA "is remedial in character; and must be liberally construed in favor of those whom the legislature intended to benefit." (Citations omitted; internal quotation marks omitted.) Id.
The employer-employee relationship does not itself constitute trade or commerce for the purposes of an action under CUTPA. SeeQuimby v. Kimberly Clark Corp. , 28 Conn. App. 660, 670,613 A.2d 838 (1992). In Larsen Chelsey Realty Co v. Larsen, 232 Conn. 480,494, 656 A.2d 1009 (1995), the Supreme Court held that "it was not the employment relationship that was dispositive, but the defendant's conduct." Fink v. Golenbock, 238 Conn. 183, 214,680 A.2d 1243 (1996). Thus, an employer can state a CUTPA claim based on its employee's conduct. Id.
In Larsen, the defendant prepared and mailed a letter to the plaintiff's clients falsely stating that the plaintiff was ceasing operations and merging its personnel with a different real estate brokerage firm. Larsen Chelsey Realty Co. v. Larsen, supra,232 Conn. 494. Moreover, the defendant instructed the New Haven board CT Page 14600 of realtors that "he no longer was affiliated with the plaintiff. . . and that the plaintiff was going out of business."Id. The court held that the defendant's aforementioned activities implicated the plaintiff's real estate business and "thus implicated trade or commerce under CUTPA." Id. The court further held that the trial court "improperly focused on the employer-employee relationship between the plaintiff and [defendant], rather than on his anticompetitive activities that were outside the scope of his employment." Id., 491.
The plaintiff alleges that Milo continued to work for Siger while being employed as the managing director of the plaintiff. The plaintiff further alleges that while employed by the plaintiff, Milo contacted several major companies to persuade them to use Siger's services, rather than those of the plaintiff Thus, here the CUTPA claim is not based on the employer-employee relationship between the plaintiff and Milo, but rather on Milo's anticompetitive activities that are outside the scope of his employment. See Larsen Chelsey Realty Co. v. Larsen, supra,232 Conn. 491. Accordingly, the court denies the defendants' motion to strike count four of the complaint.
In support of its motion to strike count five, the defendants argue that the plaintiff's CUTPA claim against Siger must be stricken because the plaintiff has failed to allege what conduct of Siger was unfair or deceptive. In opposing the motion to strike, the plaintiff argues that its allegations of a CUTPA violation are sufficient since Siger has been provided with sufficient notice of the facts claimed and the issues to be tried.
"A claim under CUTPA must be pleaded with particularity to allow evaluation of the legal theory upon which the claim is based." S.M.S Textile Mills, Inc. v. Brown, Jacobson,Tillinghast, Lahan King, P.C., 32 Conn. App. 786, 797,631 A.2d 340, cert. denied, 228 Conn. 903, 634 A.2d 296
(1993). "In order to withstand a motion to strike for legal insufficiency, [the] plaintiff must allege practices or methods of trade by the defendant that can be described as immoral, unethical, oppressive, unscrupulous or offensive to public policy." (Internal quotation marks omitted.) Butler v. Bankers Shippers Insurance Co., Superior Court, judicial district of Waterbury, Docket No. 131722, (January 8, 1998,Murray, J.). CT Page 14601
Here, the plaintiff alleges that despite Milo's promise to dissolve Siger, Milo continued to operate Siger during the period that he was reinstated as Managing Director of InteliSearch. The plaintiff further alleges that after Milo resigned, Milo took confidential proprietary information belonging to the plaintiff. The plaintiff also alleges that Siger competed with InteliSearch by posting several position announcements on Internet sites, and in publications. The defendants argue that the plaintiff's allegations do not go to Siger's conduct. The defendants assert that Siger is not responsible for Milo's acts and that the plaintiff has failed to allege that Siger had knowledge that Milo had taken confidential proprietary information belonging to the plaintiff.
The defendants' above mentioned arguments lack substance since the plaintiff has alleged facts indicating that Milo controls Siger. For example, the plaintiff alleges that Milo represented that he was the owner of Siger. (Revised complaint, count five, ¶ 10.) The plaintiff further alleges that Milo represented to the plaintiff that he would dissolve Siger and that he had dissolved Siger (Revised complaint, count five, ¶ 46, 49.) Moreover, the plaintiff alleges that Milo continued to operate Siger during the period that he was reinstated. (Revised complaint, count five, ¶ 61.) The plaintiff further alleges that Milo contacted several major companies to persuade them to use Siger's services, rather than the plaintiffs, and additionally posted several position announcements on various internet sites, and in several publications. (Revised complaint, count five, ¶ 28, count five, ¶ 32-36.)
"In reviewing the granting of a motion to strike, we take the facts alleged in the plaintiff's complaint and construe the complaint in the manner most favorable to the plaintiff . . . This includes the facts necessarily implied and fairly provable under the allegations . . . S.M.S Textile Mills. Inc v. Brown,Jacobson, Tillinghast, Lahan King, P.C., supra,32 Conn. App. 796. The plaintiff has implicitly alleged that Siger is controlled by Milo. As a result, Siger's aforementioned activities can be described as immoral, unethical, oppressive, unscrupulous or offensive to public policy. Accordingly, the court denies the defendants' motion to strike count five of the complaint since the plaintiff's CUTPA claim against Siger has been pleaded with sufficient particularity
In support of its motion to strike counts six and seven, the CT Page 14602 defendants argue that the plaintiff's claim for unjust enrichment should be stricken because the plaintiff has failed to allege that either Milo or Siger obtained any financial gain or any other benefit from the alleged acquisition of confidential information. In opposing the motion to strike the plaintiff argues that it has alleged that both Milo and Siger have and will continue to benefit from the use of wrongfully obtained information regarding candidates and clients.
"Unjust enrichment is a very broad and flexible equitable doctrine . . . which has as its basis that it is contrary to equity and good conscience for the defendant to retain a benefit which has come to him at the expense of the plaintiff . . . Its three basic requirements are (1) that the [defendant was] benefitted [benefited], (2) that the [defendant] unjustly did not pay the [plaintiff] for the benefits, and (3) that the failure of payment was to the [plaintiff's] detriment." (Citations omitted; internal quotation marks omitted.) Zanoni v. Hudon, 48 Conn. App. 32 39,708 A.2d 222, cert. denied, 244 Conn. 928, 711 A.2d 730 (1998)
The plaintiff has satisfied the first element of an unjust enrichment claim by alleging that Milo and Siger have and will continue to benefit from the use of wrongfully obtained information on candidates and clients. (Revised complaint counts six and seven, ¶ 63) The plaintiff has satisfied the second requirement of an unjust enrichment claim by alleging that Milo and Siger did not compensate the plaintiff for the use of information on candidates and clients. (Revised complaint, counts six and seven, ¶ 64) Moreover, the plaintiff alleges that Milo and Siger's failure to pay has operated to the detriment of the plaintiff, thereby satisfying the third requirement of a claim for unjust enrichment. (Revised complaint, counts six and seven, ¶ 66.) Accordingly, the court denies the defendants' motion to strike counts six and seven of the complaint
In support of its motion to strike count eight, the defendants argue that the plaintiff's complaint fails to allege any improper means or motive on the part of Siger to establish a claim for tortious interference with contractual relationships. In opposing the motion to strike, the plaintiff argues that Siger was aware of Milo's contractual obligations to the plaintiff and Siger intentionally instructed Milo to breach those contractual duties.
"This court has long recognized a cause of action for CT Page 14603 tortious interference with contract rights or other business relations." (Internal quotation marks omitted.) WellingtonSystems. Inc. v. Redding Group. Inc., 49 Conn. App. 152, 166,___ A.2d ___ (1998). "[I]t is well-settled that the tort of interference with contractual relations only lies when a third party adversely affects the contractual relations of two other parties." Id., 168. "[N]ot every act that disturbs a contract or business expectancy is actionable." Holler v. BuckleyBroadcasting Corp. , 47 Conn. App. 764, 769, 706 A.2d 1379 (1998). "The necessary elements of a cause of action in tortious interference with business relations are the existence of a business relationship, an intentional and improper interference with that relationship and a resulting loss of benefits of the relationship. " (Internal quotation marks omitted.) Id., 768. "[T]he plaintiff [is required] to plead and prove at least some improper motive or improper means." (Internal quotation marks omitted.) Id., 769.
Here, the plaintiff alleges that Siger intentionally interfered with Milo's contract with the plaintiff by instructing Milo to (1) pursue business activities for Siger that were cultivated while with the plaintiff; (2) use the plaintiff's proprietary information on behalf of Siger; (3) engage in recruitment-related activity for Siger while employed by the plaintiff; and (4) not maintain a message on Siger's telephone number referring calls to the plaintiff. (Revised complaint, count eight, ¶ 63.) The plaintiff also alleges that it has been damaged as a result of Siger's interference. (Revised complaint, count eight, ¶ 65.) The court denies the defendants' motion to strike count eight of the complaint.
The court denies the defendants' motion to strike all counts of the complaint based on the plaintiff's lack of corporate capacity. The court denies the defendants' motion to strike counts four through eight.
KARAZIN, J.